```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
ROBERT IARIA, PATRICK FOLEY, LINDA
RICCO, and ANTHONY WIEDERHOLD,

                        Plaintiffs,
                                                              MEMORANDUM
         -against-                                            & ORDER
                                                              07-CV-4853 (NG)
METRO FUEL OIL CORP.,

                        Defendant.
-----------------------------------------------------------X
```
GOLD, S., *United States Magistrate Judge*:

Plaintiffs bring this action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq*., and under New York state law, seeking to recover unpaid overtime compensation and statutory damages in connection with defendant's alleged labor law violations. Plaintiffs allege that they were employed as dispatchers by defendant Metro Fuel, a heating oil delivery company, and that they were not compensated for working more than 40 hours per week, as required by the FLSA and New York law.

Defendant has moved for partial summary judgment, arguing that plaintiffs' job duties satisfy an exemption for administrative employees under the FLSA and New York law.[1] The parties consented to have me decide the motion pursuant to 28 U.S.C. § 636(c). *See* Docket Entry 13.

## Background – Plaintiffs' Duties as Dispatchers

In determining whether the dispatchers in this case meet the administrative exemption, I

---

[1] Plaintiff Patrick Foley also brings a retaliation claim. Defendant has not moved for summary judgment on this claim. In addition, although it is entered on the docket sheet as a "Counter-motion," Docket Entry 14 is plaintiffs' opposition to defendant's motion for summary judgment and not a motion of any type. Plaintiffs have not moved for summary judgment.

must consider the totality of plaintiffs' responsibilities. The parties dispute what the actual primary duties of plaintiffs were. Generally, defendant contends that plaintiffs were part of management, supervised Metro Fuel's drivers, and exercised significant discretion in carrying out their responsibilities. Def. R.56.1 Statement ¶¶ 14, 22-24, 38-43. At oral argument on the motion, though, defendant acknowledged that plaintiffs' primary duties were routing heating oil deliveries, tracking the drivers throughout the day, and handling calls from customers when customer service personnel were unavailable.

At their depositions, plaintiffs consistently described their primary duties as monitoring drivers' deliveries, responding to drivers' problems, handling some customer service calls, routing, entering data in the computers, and checking the drivers' logs. Ricco Dep. 16-18; Foley Dep. 20, 22-23; Wiederhold Dep. 17, 34-35. Plaintiffs' supervisor, Scott Alnwick, similarly described plaintiffs' responsibilities as routing, monitoring the drivers' progress, and assisting with customer service calls. Alnwick Dep. 15-18, 23. Plaintiffs also stated that they exercised minimal discretion and authority in the performance of their duties; rather, they testified that they were closely supervised, even when making changes to delivery schedules and re-routing deliveries. Iaria Dep. 61-62; Ricco Dep. 27-28; Foley Dep. 24, 26-27; Wiederhold Dep. 31-32, 41.

## Discussion

*A.    Standards Governing Summary Judgment*

When deciding a motion for summary judgment, a court must assess whether there are any genuine issues of material fact to be tried. *Coach Leatherware Co. v. AnnTaylor, Inc.*, 933 F.2d 162, 167 (2d Cir. 1991). *See also* FED. R. CIV. P. 56(c). A factual dispute is material if it

"might affect the outcome of the suit under the governing law," and the dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). The court resolves any ambiguities and draws all reasonable inferences in favor of the nonmoving party. *See Coach Leatherware Co.*, 933 F.2d at 167.

B.      The FLSA, 29 U.S.C. §§ 201 et seq.[2]

The FLSA requires an employer to pay overtime compensation of at least one-and-a-half the usual rate if an employee works more than forty hours in a workweek. 29 U.S.C. § 207(a)(1). *See also* N.Y. LAB. LAW §§ 650 *et seq.*; 12 N.Y.C.R.R. § 142-2.2 (requiring overtime compensation). Employees working in several categories enumerated in the FLSA, however, are exempt from the statute's overtime provisions. For example, the overtime wage requirement does not apply to any employee who works in a "bona fide administrative capacity." 29 U.S.C. § 213(a)(1). *See also* N.Y. LAB. LAW § 651(5)(c). Defendant contends that plaintiffs are exempt from overtime compensation pursuant to this provision.

An employer bears the burden of establishing that an employee meets one of the FLSA's exemptions. *Bilyou v. Dutchess Beer Distribs., Inc.*, 300 F.3d 217, 222 (2d Cir. 2002). Moreover, the FLSA exemptions are to be "narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within their terms and spirit." *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392, 80 S. Ct. 453, 456

---

[2] The FLSA and New York labor law have similar provisions governing overtime and defining exempt employees. *See Whalen v. J.P. Morgan Chase & Co.*, 569 F. Supp. 2d 327, 330 n.2 (W.D.N.Y. 2008). Accordingly, the same analysis applies to both, and I will analyze plaintiffs' federal and state claims in tandem, with reference to the FLSA only. *Kahn v. Superior Chicken & Ribs, Inc.*, 331 F. Supp. 2d 115, 117 n.1 (E.D.N.Y. 2004).

(1960), *quoted in Bilyou*, 300 F.3d at 222; *see also Schaefer v. Indiana Michigan Power Co.*, 358 F.3d 394, 407 (6th Cir. 2004) (reversing grant of summary judgment for defendant on issue of whether employee met administrative exemption after finding that issues of fact remained concerning employee's primary duties). "Determining whether an employee is exempt from the overtime pay requirements is a fact intensive inquiry." *Kahn v. Superior Chicken & Ribs, Inc.*, 331 F. Supp. 2d 115, 118 (E.D.N.Y. 2004). *See also* DOL Field Operations Handbook § 22d04 ("The exempt status of individual dispatchers will depend upon the facts in each case.").

The Department of Labor's regulations (the "regulations") set forth a "short test" for determining whether an employee qualifies for the administrative exemption. The short test has two requirements: 1) the employee must be paid at least $455 per week and 2) the employee's primary duties must include: "the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and . . . the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a).

Plaintiffs here do not dispute that they all meet the salary requirement. They contend, however, that their responsibilities as dispatchers do not meet the "primary duties" requirement of the short test.

Courts have divided over whether the job duties of a dispatcher meet the administrative exemption. *Compare Alvarez v. Key Transp. Serv. Corp.*, 541 F. Supp. 2d 1308, 1313-14 (S.D. Fla. 2008) (denying summary judgment on defendant's motion that car dispatcher was exempt); *Marshall v. Nat'l Freight, Inc.*, 1979 WL 1977, at *8 (D.N.J. Sept. 6, 1979) (concluding, based on the facts of the case, that dispatchers were not exempt); *Sawyer v. Bay State Motor Express*

*Co.*, 89 F. Supp. 843 (D. Mass. 1948) *with Perine v. ABF Freight Sys., Inc.*, 457 F. Supp. 2d 1004, 1016 (C.D. Cal. 2006) (granting defendant summary judgment and finding that dispatcher was exempt administrative employee under California law, which is similar to the FLSA); *LaPoint v. CRST Intern., Inc.*, 2004 WL 3105950, at *9 (N.D. Iowa June 16, 2004) (concluding that dispatcher was exempt); *D'Angelo v. J&F Steel Corp.*, 2003 WL 1888775, at *7 (N.D. Ill. Apr. 14, 2003) (granting defendant summary judgment and concluding that dispatcher was exempt); *Donovan v. Flowers Marine, Inc.*, 545 F. Supp. 991, 994 (E.D. La. 1982) (concluding after bench trial that dispatchers were exempt); *Mooney v. Preston Trucking Co.*, 215 F. Supp. 568 (D.N.J. 1963); *Goldberg v. Ark. Best Freight Sys.*, 206 F. Supp. 828 (W.D. Ark. 1962); *Mitchell v. Branch Motor Express Co.*, 168 F. Supp. 72 (E.D. Pa. 1958); *McComb v. N.Y. & New Brunswick Auto Exp. Co.*, 95 F. Supp. 636 (D.N.J. 1950).[3]

As pointed out by one court, however, the precedential value of these cases depends upon their specific facts:

> Reference to cases wherein unpaid wages for "dispatchers" was sought is helpful only if the tasks and duties of those "dispatchers" are substantially identical to the tasks and duties of the defendant's dispatchers. For the Regulations do not exempt those who qualify as "dispatchers"; they only exempt those employees who do certain defined tasks.

*Marshall*, 1979 WL 1977, at *5. Although a majority of the courts to have considered the question have concluded that a dispatcher is exempt, many of those courts did so only after

---

[3] It appears that an earlier regulation explicitly provided that a "traffic manager" who, *inter alia*, planned the most efficient and economical shipping routes should be deemed an exempt administrative employee. *See Mitchell*, 168 F. Supp. at 78, *quoting* 29 C.F.R. § 541.208(e). This regulation is no longer in force. Accordingly, I do not find the older cases that defendant cites persuasive.

5

finding, on the specific facts presented, that the employee exercised considerable discretion and supervisory authority. *See*, *e.g.*, *LaPoint, Inc.*, 2004 WL 3105950, at *9 (dispatcher had "authority to discipline other employees" and was "in charge during his work hours"); *Mooney*, 215 F. Supp. at 572 (dispatcher "was in charge" of defendant's delivery service and had the authority to initiate disciplinary action, to suspend drivers, to cause drivers to be discharged, and to approve overtime pay); *Mitchell*, 168 F. Supp. at 74-75 (dispatcher exercised discretion and independent judgment in disciplining, suspending, and recommending for discharge drivers and other employees and was "in complete charge of the operation"); *McComb*, 95 F. Supp. at 640 (dispatchers were "completely in charge of the operation phase of the defendant's business" with "complete authority and discretion," including authority to hire and discharge employees); *cf. Sawyer*, 89 F. Supp. at 844 (dispatcher who had "complete control of . . . dispatching" but "no power to hire or fire [and] no charge over other employees" was not exempt).

   *1.*  *Duties Requirement – Directly Related to Management or General Business Operations*

As noted above, the first prong of the duties requirement is that the employee's work be "directly related to the management or general business operations of the employer or the employer's customers." To meet this requirement, "an employee must perform work directly related to assisting with the running or servicing of the business," as opposed, for example, to work on a manufacturing production line or selling products in a retail store. 29 C.F.R. § 541.201(a). The regulations further provide a non-exhaustive list of exempt administrative tasks that meet this definition, including work in such areas as tax, accounting, budgeting, purchasing, advertising, marketing, personnel management, human resources, and computer networks, to name a few. *Id.* § 541.201(b).

As stated by one court,

> the examples of employees meeting the "directly related" test provided in 29 C.F.R. § 541.201(b) . . . all [have] duties clearly related to servicing the business itself: it could not function properly without employees to maintain it; a business must pay its taxes and keep up its insurance. Such are not activities that involve what the day-to-day business specifically sells or provides, rather these are tasks that every business must undertake in order to function.

*Neary v. Metro. Prop. & Cas. Ins. Co.*, 517 F. Supp. 2d 606, 614 (D. Conn. 2007).

In this case, plaintiffs' duties relate more directly to the service and product that Metro Fuel provides – the delivery of fuel for heating – than they do to servicing the business. *See Alvarez*, 541 F. Supp. 2d at 1313 ("As the Night Dispatch Manager, [plaintiff] performed duties closer to 'working on a manufacturing production line,' or 'selling a product in a . . . service establishment' because he was working toward fulfilling a customer's need for a service, than to performing administrative duties, which generally do not involve customers but rather the day-to-day operations of the business."); *Relyea v. Carman, Callahan & Ingham*, 2006 WL 2577829, at *3-5 (E.D.N.Y. Sept. 6, 2006) (concluding that the duties of a real estate closer employed by a law firm were more like those of "production" workers than administrative employees, and holding that the real estate closers were not exempt employees because their duties were not directly related to defendant's management or general business operations). Here, plaintiffs' daily tasks ensured that defendant's product (fuel) was delivered timely and efficiently. *See* Alnwick Dep. 23 ("The majority [of a dispatcher's] time was spent watching digital, adjusting driver routes throughout the day, routing for the next day."). The tasks performed by plaintiffs were not administrative tasks of the type every business must undertake, such as those performed

7

by accountants, personnel officers, and computer programmers. 29 C.F.R. § 541.201(b). Accordingly, narrowly construing the exemption, I find that defendant has not clearly established that plaintiffs' primary duties were "directly related to the management or general business operations" of defendant.

*2.     Duties Requirement – Discretion and Independent Judgment*

As noted above, the regulations also require that an exempt administrative employee exercise "discretion and independent judgment with respect to matters of significance." The term "'matters of significance' refers to the level of importance or consequence of the work performed." 29 C.F.R. § 541.202(a).[4] In addition, the "exercise of discretion and independent judgment must be more than the use of skill in applying well-established techniques, procedures, or specific standards described in manuals or other sources." *Id.* § 541.202(e).

Section 22d04 of the DOL Field Operations Handbook provides specific guidance in evaluating whether a dispatcher's duties meet the FLSA's administrative exemption.[5] The Handbook notes that a dispatcher's "duties of routing trucks and assigning drivers are, for the

---

[4] Similar to the duties requirement, the regulations provide a non-exhaustive list of factors to consider when determining whether an employee exercises sufficient discretion for the exemption to apply. *See* 29 C.F.R. § 541.202(b). The evidence here suggests that plaintiffs lacked authority with respect to many of the types of matters identified in this regulation as indicating that an employee falls within the administrative exemption.

[5] "The Field Operations Handbook (FOH) is an operations manual that provides Wage and Hour Division (WHD) investigators and staff with interpretations of statutory provisions, procedures for conducting investigations, and general administrative guidance." Field Operations Handbook, *available at* http://www.dol.gov/esa/whd/FOH/ (last visited Jan. 23, 2009). The WHD's interpretation of the statute and regulations is entitled to "considerable weight." *Reich v. State of N.Y.*, 3 F.3d 581, 588 (2d Cir. 1993); *see also Chevron U.S.A. v. Natural Res. Def. Council*, 467 U.S. 837, 844-45, 104 S. Ct. 2778, 2782-83 (1984); *Samson v. Apollo Rest.*, 242 F.3d 629, 638 (5th Cir. 2001); *Reich v. Am. Intern. Adjustment Co.*, 1994 WL 870273, at *3 (D. Conn. May 11, 1994).

most part, dependent upon their knowledge" and "[s]uch duties do not ordinarily involve discretion and independent judgment at the level contemplated by the Reg." DOL Field Operations Handbook § 22d04(b). Moreover, although duties such as "determin[ing] the need for extra [trucks], decid[ing] whether to cancel [a route] and tak[ing] actions on accident reports . . . may on certain occasions require the use of discretion and independent judgment . . .[,] dispatchers performing the above duties do not qualify for exemption as administrative employees." *Id.* § 22d04(c). In contrast, however, "where the company does not operate over regular routes, or where there is a choice between using the company's own trucks or a contract carrier's trucks or where dispatchers handle emergency situations, there may be the exercise of discretion and independent judgment" sufficient to satisfy the administrative exemption requirements. *Id.* § 22d04(b).

Plaintiffs' duties as dispatchers employed by Metro Fuel are analogous to those described in the Field Operations Handbook as not meeting the exemption. Even if I were to accept defendant's contentions that plaintiffs exercised some degree of discretion and independent judgment when they changed routes and delivery schedules, added additional drivers, assigned drivers, reviewed the drivers' logs, and handled driver accident reports, the level of independent judgment exercised would not qualify for the administrative exemption. *See* DOL Field Operations Handbook § 22d04(c). These are not the types of tasks that require broad discretion or that involve matters of significance as contemplated by the regulations. *See Neary*, 517 F. Supp. 2d at 616. Instead, plaintiffs used their knowledge, experience and skills to make "simple decision[s]" when routing the trucks and responding to reports of an accident. *Id.*

Moreover, plaintiffs contend that they lacked even the limited authority attributed to them

by defendant, but instead sought the approval of their supervisor, Scott Alnwick, before taking most actions. *See*, *e.g.*, Iaria Dep. 62 ("[I]f a driver called in sick, . . . the first thing that I would do is to let Scott [Alnwick] know to see how he wanted to handle it."); *Id.* at 67-68 (needed supervisor's approval to add drivers, send drivers home early, or authorize overtime); Ricco Dep. 17-18 (referred calls from drivers who broke down or had accidents to her supervisor); *Id.* at 28 (notified supervisor if driver failed to appear for work); Foley Dep. 23-24 (notified supervisors if driver had an accident); *Id.* at 26-27, 38 (sought supervisor's advice if re-routing); *Id.* at 35 (contacted supervisors if driver called concerning a fuel spill); Wiederhold Dep. 27, 29 (notified supervisor if driver was sick or of any problems concerning drivers); *Id.* at 31-32, 33-34 (contacted supervisor, or other management personnel, if truck broke down or driver reported oil spill).[6] All of the plaintiffs specifically deny having had any authority to authorize overtime for drivers. Iaria Decl. ¶ 6; Ricco Decl. ¶ 25; Foley Decl. ¶ 8; Wiederhold Decl. ¶ 6. Plaintiffs likewise uniformly assert that they lacked authority to discipline drivers. Iaria Decl. ¶ 20 ("I did not have authority to discipline drivers."); Ricco Decl. ¶ 26; Ricco Dep. 25 ("I had no say whether a driver should be disciplined."); Foley Decl. ¶ 16; Foley Dep. 31 ("I had no disciplinary authority whatsoever with the drivers."); Wiederhold Decl. ¶ 24. With respect to plaintiffs' authority to handle driver accidents and problems, plaintiffs assert that they simply answered calls from drivers who broke down or had accidents or fuel spills, followed standard protocols

---

[6] At oral argument, defendant contended that plaintiffs had significant authority and discretion, but failed to exercise it, instead relying on their supervisor to make decisions. Defendant further argued that it was irrelevant whether or not plaintiffs actually exercised the authority; if they were empowered with the authority, whether or not they actually used it, they would meet the exemption. Plaintiffs, however, as noted above, specifically disavow that they had the authority to act in many of the circumstances identified by defendant without approval from their supervisor.

10

(such as to notify police or to send out a clean-up crew), and informed their supervisors, who then took further action. Ricco Dep. 17-18; Foley Dep. 23-24, 35; Wiederhold Dep. 31-34. Plaintiffs' assertions that they lacked authority and discretion over these critical tasks counter the factual basis for defendant's argument that plaintiffs fall within the administrative exemption. *See Marshall*, 1979 WL 1977, at *5 ("Particularly in the areas of employment, accidents and repairs, and issuance of checks to drivers, areas all crucial, the court feels, in weighing the duties and responsibilities of the dispatcher, the dispatchers did not make [a] decision. They either simply followed standard procedure or referred the problem to another office . . . or to a superior . . . .").

Additionally, the deposition testimony of their supervisor suggests that plaintiffs lacked authority and discretion "with respect to matters of significance." At his deposition, Alnwick stated the following concerning the dispatchers:

> They can make decisions. But when it came to a decision that . . . was of high significance or a high profile or high risk type of thing, the manager would be contacted to make that assessment. . . . The dispatchers had th[e] responsibilit[y] [of] keeping the day to day operation moving, making the adjustments, changes to stay on deliveries, K fixing, scheduling, adding drivers, taking drivers off. They . . . made day to day decisions in reference to dispatching. . . . They would probably give their opinion on a matter [of more significance]. But as far as a decision, no.

Alnwick Dep. 122-23. *See also* Alnwick Dep. 118 (stating that he was the only responsible decision maker in the Operations Department, which included the dispatchers).

Defendant points to several e-mails and a memorandum suggesting that the dispatchers were management and had authority to authorize driver overtime, to take trucks out of service for safety reasons, to call in subcontractors, and to direct the repair shop. Klausner Aff. Exs. B, G-I,

11

K, O, and P.[7] First, as discussed above, plaintiffs directly dispute that they had such authority. Second, for an exemption to apply, an employee's "primary" duties must be comprised of exempt work. 29 C.F.R. § 541.700(a). The e-mails and memorandum pointed to by defendant, while they may suggest that plaintiffs exercised some degree of discretionary authority and independent judgment on specific occasions, do not indicate that plaintiffs spent the majority of their time doing so. Moreover, plaintiffs testified that they engaged in such tasks only rarely, when their supervisor was not available. *See, e.g.*, Ricco Dep. 22 (prepared drivers' schedules only when supervisor not in); *Id.* at 24 (gave work to subcontractors only when supervisor not in); *Id.* at 28 (re-routed deliveries only if supervisor not in); Foley Dep. 25-27 (had authority to reroute only in emergency situations or if supervisor not around); Wiederhold Dep. 32 (supervisor could be reached at least 90% of the time).

## Conclusion

The parties sharply dispute practically every factual allegation concerning the duties of dispatchers employed by defendant. They disagree as to whether dispatchers were part of management, what level of authority dispatchers possessed over drivers, and whether dispatchers routed and changed deliveries independently or under the close supervision of management. *Compare* Def. R.56.1 Statement ¶¶ 14, 22-24, 38-43 *with* Pls. R.56.1 Statement ¶¶ 14, 22-24, 38-43. Thus, the parties dispute material facts critical to determining whether plaintiffs' duties as dispatchers meet the FLSA administrative exemption.

---

[7] I note that all of these e-mails and the memorandum concern only plaintiff Robert Iaria. Thus, even if I were to accept defendant's assertions, the most I could conclude is that Iaria exercised discretion and supervisory authority.

Accordingly, narrowly construing the exemption against the employer, defendant has failed to establish with undisputed evidence that plaintiffs' duties as dispatchers fit "plainly and unmistakably" within the administrative exemption. *Arnold*, 361 U.S. at 392, 80 S. Ct. at 456. For all these reasons, defendant's motion for summary judgment is denied.

**SO ORDERED.**

/s/
STEVEN M. GOLD
United States Magistrate Judge

Dated: Brooklyn, New York
January 30, 2009